BUSSARD (WATERS v.). See Case No. 17,-262.

---

## Case No. 2,230.

### BUSSEY et al. v. HICKS et al.

### SAME v. WAGER.

[9 O. G. 594.]

Circuit Court, N. D. New York. March 4, 1876.

[9 O. G. 594, contains the decree of perpetual injunction in these cases, which decree will be found at the end of the opinion in the next following case, No. 2,231.]

---

## Case No. 2,231.

### BUSSEY et al. v. WAGER et al.

[2 Ban. & A. 229; 9 O. G. 300; 23 Pittsb. Leg. J. 131; Merw. Pat. Inv. 456.][1]

Circuit Court, N. D. New York. Jan. Term, 1876.

PATENTS—INFRINGEMENT—RESERVOIR COOKING STOVES.

The fourth claim of complainants' patent, construed to be for the combination due to the location of a reservoir in relation to a partial back plate, so that the front plate of the reservoir will form a portion of the casing of the vertical flues, and be directly heated by the products of combustion as they pass up and down the rear flue or flues, thus substituting the front of the reservoir for the portion of the back plate omitted in the construction; and upon such interpretation held to be infringed by the defendants.

This was a bill in equity filed [by Ezek Bussey and Charles A. McLeod] against the defendants [James Wager, E. J. Hicks, and G. G. Wolfe] for infringement of reissued letters-patent No. 5,435, dated June 3, 1873 [patent originally issued to Bussey and McLeod, December 5, 1865, and numbered 51,292], granted to complainants for improvements in reservoir cooking stoves.

Esek Cowen and George Harding, for complainants.

Samuel A. Duncan and George Gifford, for defendants.

WALLACE, District Judge. The pressure of other duties requires me, in the disposition of these causes, to confine myself to such a brief statement of my views, on the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. 23 Pittsb. Leg. J. 131, and Merw. Pat. Inv. 456, contain only a partial report.]

several questions involved, as will suffice to apprise the parties of my conclusions, and enable an appellate court, perhaps more readily, to detect any error into which I may have fallen.

I. In view of the state of the art prior to Bussey's patent, none of the parts claimed in the patent are new, but Bussey effected a new combination which produced new and useful results, and not merely an aggregation of the results due to the independent action of the several parts. He combined a reservoir in such relation to a top plate and partial back plate, that the reservoir performed both the functions of a reservoir and of a partial back plate of a stove; and this is the new result and the only one due to the combination. By the combination the top plate supported a reservoir in place of the portion of the back plate omitted, but in this it·performed no other function. In a large number of stoves, and from the earliest constructions, one of the functions of a top plate has been to support water-reservoirs exposed to the heat-passage of the stove. In the Stewart stove it supported a reservoir in the rear of the body of the stove. Neither did the exit-passage, by the combination, perform any new function. Numerous instances of its use to heat reservoirs have been adduced. In the Stevens construction its relation to the reservoir was precisely the same as in Bussey's.

II. The combination involved invention and produced a beneficial result; that it involves invention follows from what has been above stated; that it produced beneficial results is evidenced by the practical success of the improvement. While, obviously, by changing the form and proportions of a reservoir cooking-stove, thereby making a more attractive article, Bussey made an improvement, in a general sense these changes were not patentable. But the removal or omission of a portion of the back plate, and supplying its place with a reservoir, though it now seems to have been a very simple invention, substantially effected a new organization of the stove, which at once commanded the favor of dealers and manufacturers, and has since been very generally adopted, and was, I think, the fundamental idea of the defendants' constructions.

III. The patent is not invalidated by any of the publications, patents, or constructions which preceded it. The stoves of Stephens and Gessenhainer approach more nearly to Bussey's than any other to which reference is made in the proofs. In these stoves the reservoir is constructed in part by the rear plate of the stove. In Bussey's stove, on the contrary, the reservoir is made to supply a part of the back plate which has been omitted. The difference between making a back plate form part of a reservoir, and making a reservoir to form a part of a back plate, is not one of words merely, but is such a radical difference, that Stephens found his

contrivance repudiated by manufacturers, and discarded. Gessenhainer seems to have no existence except in the patent office, while Bussey has met the demands of the trade and has evidently been fully appreciated by the defendants in these actions.

IV. Several of the claims in the patent cannot be sustained. The first claim is an illustration—the top plate of a cooking-stove extended beyond the rear flues thereof, and provided with a boiler, as and for the purpose described—and is a claim for that of which Bussey was not the inventor. It is specifically anticipated by the top plate of Stewart. I do not deem it necessary to discuss the other untenable claims.

V. The invention is sufficiently described in the fourth claim of the patent. Fairly interpreted and giving force to the words "as and for the purposes described," it covers the combination due to the location of a reservoir in relation to a partial back plate, so that the front plate of the reservoir will form a portion of the casing of the vertical flues and be directly heated by the products of combustion as they pass up and down the rear flue or flues, thus substituting the front of the reservoir for the portion of the back plate omitted in the construction. This substitution is effected, in part, by inserting the reservoir in an extended top plate. In this connection I am constrained to say that it is only by giving force to the doctrine that a liberal construction should be accorded to patents, so, if possible, to secure to an inventor what is really his invention, that I am able to adjudge any of the claims good. Were it not that the description and drawings in the original patent quite satisfactorily disclose the real invention of Bussey, while the claim therein is defective in statement, I should be strongly inclined to believe that the reissue was framed with such multitudinous and obscurely worded claims, rather for the purpose of deceiving the public than for that of securing what was fairly his. I am the more convinced these claims were not framed with a dishonest intent, because they are so inaccurately expressed that the real invention, which it seems might have been stated in very simple terms, can only with difficulty be protected by them.

VI. The Wager construction is an infringement of the fourth claim; the appropriation of the invention is none the less apparent because the reservoir is almost entirely incased in another reservoir connected with the top plate by a mechanical equivalent by the projected top plate of the complainants.

VII. With considerable doubt I have arrived at the conclusion that the Hicks & Wolfe construction is an infringement of the fourth claim of the patent. By the reservoir in their stove the flues are not rendered as near as possible air-tight. There is a plausibility in the theory that the flues open into a chamber surrounding the reservoir, and that the reservoir is thereby, to some extent,

heated by indirect circulation. Evidently the flues are inclosed sufficiently so that the draft of the stove is not disturbed. And clearly the reservoir is heated by the products of combustion as they pass up and down the rear flues, and in view of the evidence that it has been found expedient to partially incase the flues of the Bussey stove, because the reservoirs are overheated, it is difficult to believe that any purpose is subserved by obtaining an indirect circulation around the boiler, except that of colorable departure from complainants' combination.

VIII. Inasmuch as complainants have filed no disclaimer, and many of the claims in their patents are void, they are not to recover costs.

[The following final proceedings were had in this case, as reported in 9 O. G. 594:]

The President of the United States of America, to E. J. Hicks and G. G. Wolfe, and to their agents, servants, counsellors, attorneys, and solicitors, and each and every of them, greeting:

Whereas, it has been represented to us, in our circuit court in equity for the northern district of New York, on the parts of Esek Bussey and Charles A. McLeod, complainants, that said complainants have lately exhibited their bill of complaint in our said circuit court for the northern district of New York against you, the said E. J. Hicks and G. G. Wolfe, to be relieved touching the matters therein complained of, in which bill it is stated, among other things, that you are combining and confederating with others to injure the said complainants touching the matters set forth in the said bill, and that your actings and designs in the premises are contrary to equity and good conscience. We, therefore, in consideration thereof, and of the particular matters in the said bill set forth, do strictly command you, the said E. J. Hicks and G. G. Wolfe, and the persons before mentioned, and each and every one of you, under the penalty of ten thousand dollars, to be levied on your lands, goods, and chattels to our use, that you do absolutely desist and refrain from making, vending or using, or in any manner disposing of, cooking-stoves or ranges embracing the invention or improvements described in the fourth claim of the reissued letters patent set forth in said bill, viz.: "The arrangement of a reservoir at the rear of a stove, a portion of the back plate of which has been removed, so that the front plate of the reservoir will form a part of the back plate or outer casing of the vertical flues of the stove, as and for the purpose described," until the further order of our said circuit court.

Witness: Hon. Morrison R. Waite, Chief Justice of the Supreme Court of the United States, at the city of Utica, N. Y., the 4th day of March, A. D. 1876.

Charles Mason, Clerk.

P. S.—A perpetual injunction was also issued in the suit against James Wager, at same date.